IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | : |
| Plaintiff, | : CIVIL ACTION NO.: |
| | : JUDGE: |
| v. | : |
| TRADING POINT OF FINANCIAL INSTRUMENTS LTD., | : |
| Defendant. | : |

### COMPLAINT FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, alleges as follows:

### I. SUMMARY

1. On October 18, 2010, the CFTC adopted new regulations implementing certain provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010) ("Dodd-Frank Act"), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), and the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 1 *et seq.*, with respect to off-exchange foreign currency ("forex") transactions. Pursuant to Section 2(c)(2)(C)(iii)(I)(aa) of the Commodity Exchange Act ("the Act"), as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), an entity must be registered if it wants to solicit or accept orders from individuals who are *not* Eligible Contract Participants ("ECP") in connection with forex transactions at a retail foreign exchange dealer ("RFED") or futures commission

merchant. Pursuant to CFTC Regulation ("Regulation") 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), in connection with retail forex transactions, all RFEDs must be registered with the CFTC as of October 18, 2010.

2. Beginning in November 2010, and continuing to the present (the "relevant period"), Defendant Trading Point of Financial Instruments Ltd. ("Trading Point"), upon information and belief, has been soliciting or accepting orders from non-ECPs located in the United States in connection with retail forex transactions and is, or offers to be, the counterparty to these retail forex transactions without being registered as an RFED with the CFTC, in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011).

3. By virtue of this conduct and the further conduct described herein, Trading Point has engaged, is engaging, or is about to engage in acts and practices in violation of the Act, as amended by the CRA, and the Regulations.

4. Accordingly, pursuant to Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1, and Section 2(c)(2) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2), the Commission brings this action to enjoin Trading Point's unlawful acts and practices and to compel its compliance with the Act, as amended, and the Regulations and to further enjoin Trading Point from engaging in certain commodity or forex-related activity, including, through its website, soliciting or accepting orders from U.S. customers and offering to be the counterparty to customers' forex transactions, without appropriate registration with the Commission.

5. In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, disgorgement, rescission, pre-

and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

6. Unless restrained and enjoined by this Court, Trading Point likely will continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II. JURISDICTION AND VENUE

7. Section 6c(a) of the Act, as amended, to be codified at 7 U.S.C. § 13a-1(a), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

8. The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Sections 2(c)(2) and 6c of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2) and 13a-1.

9. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, as amended, to be codified at 7 U.S.C. § 13a-1(e), because Trading Point transacts business in this District and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

## III. PARTIES

10. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).

11. Defendant **Trading Point of Financial Instruments Ltd.** is a company that is located in Limassol, Cyprus. Trading Point's principal place of business is 12, Richard and

Verengaria Street, Araouzos Castle Court, 3rd Floor, 3042 Limassol, Cyprus. Trading Point has never been registered with the Commission in any capacity, but represents that it is regulated by the Cyprus Securities and Exchange Commission and registered with the Financial Services Authority of the United Kingdom.

### IV. STATUTORY BACKGROUND

12. For the purposes of trading retail forex, a "retail foreign exchange dealer" is defined in Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2011), as any person that is, or offers to be, the counterparty to a retail forex transaction, except for certain persons not relevant to this Complaint.

13. An ECP is defined by the Act, in relevant part, as an individual with total assets in excess of (i) $10 million, or (ii) $5 million if the person enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." *See* Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a.

### V. FACTS

14. On October 18, 2010, the Commission adopted new regulations implementing certain provisions of the Dodd-Frank Act and the CRA. For the purposes of retail forex transactions, the new regulations, among other things, require RFEDs to register with the CFTC.

15. On information and belief, Trading Point solicits or accepts orders from United States customers who are not ECPs to open leveraged forex trading accounts through its website www.trading-point.com.

16. As advertised on its website, Trading Point offers three types of forex trading accounts: "Micro" that requires no opening minimum deposit and has a maximum deposit of

$3,000; "Standard" that requires an opening minimum deposit of $3,000 and imposes a maximum deposit of $100,000; "Executive" that requires an opening minimum deposit of $100,000 and has no maximum deposit. The amounts required to fund these accounts are quoted in United States dollars.

17. Customers can open trading accounts by submitting information online through Trading Point's website.

18. To open an account by submitting information online, the website directs customers to fill-in information under the title "Open a Real Account."

19. The customer is then directed to enter certain information, such as his or her name, address, telephone number and email contact information, residence, type of account to open, account base currency, leverage amounts, income, net worth, education, employment information, and trading experience.

20. There is a drop down menu for "country of residence" and customers can choose "United States." The customer must also confirm by checking a box that he understands, accepts, and agrees to the Terms and Conditions, Order Execution Policy, Risk Disclosure, General Risk Disclosure, Summary of Conflicts of Interest Policy, and Privacy Policy which can also be accessed on the website.

21. Trading Point inquires about an account holder's annual income and net worth, and asks that answers be provided in U.S. dollars. The "Net Worth" fill-in section includes options to check boxes with a net worth less than $10,000, $10,000-$50,000, $50,000-$100,000, $100,000-$500,000, $500,000-$1,000,000, and more than $1,000,000. Trading Point fails to inquire whether or not its customers are "eligible contract participants" and, in fact, appears to allow individual customers who do not have total assets of $5 million or more to open accounts.

22. The Trading Point website fails to inquire into whether the prospective customer has the ability or the business need to accept foreign currency into his bank account.

23. Trading Point offers to act as a counterparty to retail forex transactions. The website states in the Section titled "Terms and Conditions" that "the Company is in relation to a transaction the Client's immediate counterpart."

24. On information and belief, the forex transactions Trading Point solicits and engages in neither result in delivery within two days nor create an enforceable obligation to deliver between a seller and a buyer who have the ability to deliver and accept delivery, respectively, in connection with their lines of business. Rather, these forex contracts remain open from day to day and ultimately are offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

25. Thus, Trading Point has been and is acting as an RFED and continues to do so by offering to act as a counterparty for United States customers to trade forex at Trading Point.

26. By the date of the filing of this complaint, Trading Point has not registered with the Commission as an RFED or in any other capacity.

27. Furthermore, Trading Point is not exempt from registration.

### VI. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

**COUNT ONE:**
**VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(aa) OF THE ACT, AS AMENDED:**
**FAILURE TO REGISTER**

28. Paragraphs 1 through 27 are realleged and incorporated herein.

29. During the relevant period, Trading Point solicits or accepts orders from non-ECPs in connection with leveraged or margined forex transactions at an RFED. Trading Point engages in this conduct without being registered as an RFED, as required by Regulation

5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), all in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa).

30. Each day that Trading Point engages in this conduct since November 2010 is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa).

### COUNT TWO:
### VIOLATION OF REGULATION 5.3(a)(6)(i):
### FAILURE TO REGISTER AS A RETAIL FOREIGN EXCHANGE DEALER

31. Paragraphs 1 through 27 are realleged and incorporated herein.

32. During the relevant period, Trading Point is, or offers to be, the counterparty to retail forex transactions without being registered as an RFED in violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011).

33. Each day that Trading Point fails to register as an RFED since November 2010 is alleged as a separate and distinct violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011).

### VII. RELIEF REQUESTED

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A. An order finding that Trading Point violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa);

B. An order finding that Trading Point violated Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011);

C.  An order of permanent injunction prohibiting Trading Point, and any other person or entity associated with it, from engaging in conduct in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa);

D.  An order of permanent injunction prohibiting Trading Point, and any other person or entity associated with it, from engaging in conduct in violation of Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011);

E.  An order of permanent injunction prohibiting Trading Point, and any other person or entity associated with it or its website, from operating its website while in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011);

F.  An order of permanent injunction prohibiting Trading Point and any successor thereof, from, directly or indirectly:

    1) Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a);

    2) Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1)), 17 C.F.R. § 32.1(b)(1) (2011)) ("commodity options"), swaps, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for its own personal account or for any account in which it has a direct or indirect interest;

3) Having any commodity futures, options on commodity futures, commodity options, swaps, and/or forex contracts traded on its behalf;

4) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options, commodity options, swaps, and/or forex contracts;

5) Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, swaps, and/or forex contracts;

6) Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and

7) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

G. Enter an order requiring that Trading Point, as well as any of its successors, disgorge to any officer appointed or directed by the Court all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices that constitute violations of the Act, as amended, and the Regulations, including pre and post-judgment interest;

H. Enter an order directing Trading Point and any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements,

whether implied or express, entered into between it and any of the customers whose funds were received by them as a result of the acts and practices, which constituted violations of the Act, as amended, and the Regulations as described herein;

I. Enter an order requiring Trading Point to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the greater of: (1) triple its monetary gain for each violation of the Act, as amended, and the Regulations or (2) $140,000 for each violation committed on or after October 23, 2008;

J. Enter an order requiring Trading Point to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

K. Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Dated: September 7, 2011

Respectfully submitted,

COMMODITY FUTURES TRADING COMMISSION

/s/ Jon J. Kramer

Jon J. Kramer
Senior Trial Attorney
Illinois ARDC No. 6272560
jkramer@cftc.gov

Elizabeth M. Streit
Chief Trial Attorney
Illinois ARDC No. 06188119

Scott R. Williamson
Deputy Regional Counsel

Illinois ARDC No. 06191293

Rosemary Hollinger
Regional Counsel
Illinois ARDC No. 3123647

Attorneys for Plaintiff
Commodity Futures Trading Commission

525 West Monroe Street, Suite 1100
Chicago, Illinois 60661

(312) 596-0563 (Kramer)
(312) 596-0537 (Streit)
(312) 596-0560 (Williamson)
(312) 596-0520 (Hollinger)
(312) 596-0700 (office number)
(312) 596-0714 (facsimile)